EAGLE *v.* OLDHAM.

Opinion delivered February 8, 1915.

1. WILLS—MEANING OF WORDS—EXTRINSIC EVIDENCE.—Extrinsic evidence may be admitted to interpret a will, not to show what the testator meant, as distinguished from what his words express, but for the purpose of showing the meaning of the words used.

2. WILLS—CONSTRUCTION—INTENTION OF TESTATOR.—The intention of the testator must govern the construction of a will, but in determining the testator's intention, the court should place itself where he stood, and consider the facts which were before the testator, in deciding what he intended by the language which he employed.

3. WILLS—DESCRIPTION OF LAND—INTENTION—EVIDENCE.—In determining what a testator meant by the description of certain lands in a will devising real property, the court may look to the testator's land book, tax receipts, deeds and plats.

4. WILLS—DEVISE OF LAND—MISDESCRIPTION—INTENTION.—A testator stated in his will that he wished to divide his lands equally between certain devisees. In the will certain lands were improperly described, and others omitted; *held*, the intention of the testator, as determined by extrinsic evidence, would govern, so as to give effect to his expressed intention.

5. APPEAL AND ERROR—TRANSFER OF ACTIONS—HARMLESS ERROR.—A decree in equity will not be reversed although the cause was improperly transferred from law, where, under the law and facts, the judgment, if rendered at law, must necessarily have been the same.

Appeal from Lonoke Chancery Court; *John E. Martineau,* Chancellor; affirmed.

### STATEMENT BY THE COURT.

The appellants brought ejectment against appellee to recover possession of three tracts of land situated in Lonoke County, Arkansas. The parties to this litigation claim under the will of Gov. James P. Eagle, who died a widower and childless, and undertook, by his will, to dispose of all property owned by him. By clauses 4 and 5 of his will he devised to his brothers and sisters and their heirs, two large bodies of land, in the description of which several errors occurred. Among such errors were three descriptions, each of which would have covered a particular subdivision of a section of land.

The sixth clause of the will is as follows: "Sixth. For the love I have and bear for my beloved wife, Mary K. Eagle, deceased, and for the love and good will I have for her brothers and sisters, W. K. Oldham, Kate Miller, Mag O. Doty, Kie Oldham and I. B. Oldham, I will and bequeath to them, to be equally divided between them, the following described lands."

And among other lands there described were the following: "The southwest part of section 31, one hundred and fifty acres; in township 1 north, range 8 west. The west half and the northeast northwest of section 5, one hundred and thirteen acres; the east part east half of section 1, one hundred acres, in township 1 south, range 8 west."

The will further recited that the testator had deeded

to his wife during her lifetime his home in Little Rock, together with other lots in this city, and recited that Mrs. Eagle was possessed of $5,600 in cash, which the testator had divided equally between her brothers and sisters, and this statement of fact is followed by this recital: "In executing this will, it has been my purpose, after giving my brothers and sisters the advantage of the value of the property I inherited from my father's estate, to divide my estate equally between Mrs. Eagle's brothers and sisters and my brothers and sisters, taking into consideration the city property and the cash herein mentioned."

Other clauses of the will which are of importance in this case are as follows:

"*Eleventh.* That all lands owned by me at my death not mentioned in this will, moneys, notes, accounts and all other personal property that I may be possessed, including G. W. Reeves' life policy, shall be used in paying my debts and in settling the bequests provided for in this will."

"*Twelfth.* After settling all my debts and all the bequests made in this will, if there is a residue, it shall be equally divided between my brother, W. H. Eagle, or his heirs, the heirs of my sister, R. C. Long, deceased, my sister, Mary J. Jones, or her heirs, and my sister, Mattie A. Boyd, or her heirs."

Clause No. 13 of the will appointed appellee and R. E. L. Eagle and Robert S. Boyd, nephews of the testator, as executors, and another clause, also numbered 13, provided the amount of the bond which these executors should execute. Other clauses made munificent gifts of moneys to the church of which Governor Eagle was a member, and to the institutions of that church. The will was dated February 15, 1904, and was not attested by witnesses. The testator died on December 20, 1904, and the will was duly probated.

Notwithstanding the inaccuracies in the description of the lands devised to the Eagle heirs, those lands were taken possession of by them, and no question was then made as to the right of the Oldham heirs to take possession of the lands which they claimed had been devised to

them, including the three tracts now in controversy, except the one hundred-acre tract. However, appellee took possession of that tract for himself and the other Oldham heirs, but upon the understanding that he would be responsible for the rents if the Oldham heirs were not entitled to them. In the administration of the estate of the testator it was not necessary for the executors to dispose of any of the lands mentioned in clause 11 of the will.

This suit was brought by the residuary legatees mentioned in the twelfth clause of the will as an action in ejectment against appellee, who was in possession, it being alleged that the lands were not mentioned in the will, and they, therefore, passed under the residuary clause. By mesne conveyances appellee had acquired the title of the other Oldham heirs to these lands. Appellee answered, and the cause was transferred to equity on his motion and over appellant's objection. The answer alleged, in substance, that the testator intended to, and did in fact, devise the tracts in controversy to the Oldham heirs, and there was prayer that the inaccuracies of description be reformed, and that appellee's title be quieted against any claim of appellants.

There is no real conflict in the evidence, and it appears that the facts are that Governor Eagle was much attached to the brothers and sisters of his deceased wife, and spent a considerable portion of his time at the home of appellee. That while Governor Eagle was a successful business man, of wide experience, he was not skilled in the use of land descriptions, and he is shown to have made a number of mistakes in the use of such descriptions in important legal instruments which he had prepared with care. Indeed, as has been stated, there were errors in the descriptions of the lands devised to the Eagle heirs as well as in the descriptions of the lands involved in this litigation.

It appears that, notwithstanding the declaration of the testator of his intention to divide his estate equally between his heirs and those of his wife, after giving his heirs the benefit of the value of all property which he had inherited from his father, the lands given the Eagle

heirs were, in fact, much more valuable than those given the Oldham heirs. This disparity in value is accounted for, in a measure, by the fact that the Oldham heirs took the residence in Little Rock and the Eagle "home place" in Lonoke County, to both of which places the testator was so attached that his estimate of market value may have been influenced by sentimental considerations. At all events, if the lands in controversy are not awarded the Oldham heirs, the testator's declared intention of dividing his lands equally will largely fail. The testator's "land book," together with a plat of his lands which he had, were offered in evidence, and also a plat of a survey of these lands which had been made after his death.

*Trimble & Trimble* and *T. D. Crawford,* for appellants.

1.  Equity had no jurisdiction to construe the will. 70 Ark. 432; 88 Ark. 1. Neither had it jurisdiction to reform the will. 15 Ark. 519; 80 Ark. 458; 86 Ark. 446; 34 Cyc. 924; Page on Wills, § 809; 22 Mo. 518, 66 Am. Dec. 630; Jones, Eq. 110, 59 Am. Dec. 602; 87 Kan. 597, 41 L. R. A. (N. S.) 1126; 28 Ala. 374; 56 Ia. 676; L. R. 3 Eq. 244; 117 U. S. 219; 3 Redf. Wills, 48; 119 Cal. 571; 39 L. R. A. 689; 6 Madd. 216; 196 Ill. 230; 122 Ind. 349; 17 Am. St. 349; 142 Ill. 214; 34 Am. St. 64; 73 Miss. 188; 55 Am. St. 527.

2.  Extrinsic evidence is not admissible either to show a mistake in a will or to ascertain the correction. 2 Pomeroy, Eq. Jur., § 871.

Extrinsic evidence in the interpretation of wills is admissible, not to show what the testator meant, as distinguished from what his words express, but simply to show what is the meaning of his words. 55 Md. 575.

An alleged mistake in the description of land devised can not be corrected by the admission of extrinsic evidence, unless the language of the will itself furnishes the basis of the correction. 103 Ind. 281; 132 Ind. 186.

The intention of a testator can not be established by parol proof, but must be determined by the language he has used. 73 Ala. 235; 115 Ala. 328; 6 Conn. 270, 16 Am.

Dec. 53; 50 Conn. 501, 47 Am. Rep. 669; 5 Fla. 542; 14 Ga. 370; 197 Ill. 398; 77 Ind. 96, 40 Am. Rep. 289; 103 Ind. 281; 6 B. Mon. 219; 66 Md. 193; 72 Md. 235; 9 Allen 109; 34 Mich. 250; 40 Miss. 758; 139 Mo. 456; 14 Johns. 1, 7 Am. Dec. 416; 90 N. C. 597; 3 Watts 240; 31 S. C. 606; 18 How. 385.

3.    The first tract described in the will is "the east part, east half of section 1, 100 acres, in township 1 south, range 8 west." This description is defective in locating the land in range 8, instead of range 9, and also because the description "east part" of section 1, 100 acres, etc., is insufficient to identify the land. 48 Ark. 419; 80 Ark. 458; 60 Ark. 487; 34 Ark. 534; 41 Ark. 495; 3 Ark. 57; 30 Ark. 657; 11 How. 329.

The second tract "the northeast northwest of section 5, 113 acres, in township 1 south, range 8 west," the testator did not own, and there is nothing in the will to identify the *southeast* quarter of the northwest quarter of that section, which he did own, if the incorrect description of the former tract should be stricken out.

The third tract, purporting to be devised to the Oldhams, viz., "the southwest part of section 31, 150 acres, in township 1 north, range 8 west," is open to the same objection of indefiniteness as the first tract above.

*Moore, Smith & Moore,* for appellee.

1.    The rigid rule adopted in some of the early English cases of adhering literally to the terms of a will, has, in this country been relaxed in the interest of justice and for the purpose of carrying out the intention of testators. The courts that feel called upon to enforce the more rigid rule, seek every means of avoiding its effect. Even under the Illinois rule as modified by expressions and rulings of the court, the testator's intention, in this case, as to the land in section 1, can be sustained by rejecting as surplusage the interlineation giving the township and range. 89 Ill. 11; 30 L. R. A. (N. S.) 307; 197 Ill. 398; 170 Ill. 290; 156 Ill. 116.

2.    When all the provisions of the will relating to section 1 are brought together, it is obvious upon the face

of the will that the testator was referring to the same section in all the descriptions of section 1, and by rejecting the erroneous description of the range as surplusage, it is easy to reconcile the language of the will with the testator's intention. The township and range are not regarded as essential where the land can be identified in other ways. 64 Ark. 580; 76 Ark. 261; 8 Vin. Abr. Tit. Devise 51, pl. 21.

The weight of modern authority is to construe wills in accordance with the intention of the testator where that intention is plain enough, as in this case, to be obvious to the court. 26 L. R. A. 370, 91 Ia. 54; 156 Ill. 116, 28 L. R. A. 149; 117 U. S. 212-220; 218 Ill. 629; 6 L. R. A. (N. S.) 974, note; 161 Ind. 533; 61 Kan. 636; 95 Md. 148; 91 Minn. 299; 150 Mo. 655; 181 Mo. 262; 41 N. Y. S. 874; 119 Wis. 352; 22 Ark. 569; 79 Ark. 363; 81 Ark. 235; 98 Ark. 553.

3. As to the southeast quarter of the northwest quarter of section 5, which the testator erroneously described in the will as the *northeast* quarter, etc., attention is directed to the language used by him throughout the will which shows conclusively that he intended to make the devise out of his *own property.*

Recitals of ownership, such as are contained in this will, are held to warrant a court in applying the description in the will to another tract of land than that which it actually described, when it appears that the testator did not own the land answering the description. 122 Ind. 134, 22 N. E. 996; 113 Ill. 53, 55 Am. 395; 180 Ind. 573, 9 N. E. 473; 140 Ind. 399, 39 N. E. 54; 142 Ind. 24, 21 N. E. 311; 91 Ia. 54, 58 N. W. 1093. See also 6 L. R. A. (N. S.) 969, note par. 15.

4. As to the land described in the will as "the southwest part of section 31, 150 acres, in township 1 north, range 8 west," one can look to all of the provisions of the will and to the location and natural characteristics of the property for the purpose of determining what the intention of the testator was in making the gift. In that light, there is no ambiguity. 68 Ark. 546. This is not a case seeking to reform the will by setting up an intention

inconsistent with the will itself, but rather an effort to establish the intention of the testator in accordance with the provisions contained in the will, viewed in the light of the facts and circumstances surrounding him at the time of its execution.

5. Appellant's objection to the description in the will, "east part of east half of section 1, 100 acres," as insufficient to identify the land intended to be devised is without merit. The description manifests an intention to lay the 100 acres off in a parallelogram, with the east line of the section as a base. 56 Ark. 45; 68 Ark. 544; 45 Ark. 17-28.

SMITH, J., (after stating the facts). (1) The state of the evidence in this case leads to the conclusion that the beneficiaries under this will were correct in the original interpretation which they gave it in entering into the possession of their respective portions. But while we may feel sure of the testator's intention, we must gather that intention from the will itself. This idea has been expressed in a variety of ways by all the courts. But extrinsic evidence is generally held admissible in the interpretation of wills, not to show what the testator meant, as distinguished from what his words express, but for the purpose of showing the meaning of the words used. *Hammond* v. *Hammond,* 55 Md. 575.

A leading case on the subject of the construction of a will containing unenforceable provisions resulting from a mistake in the description of property devised is the case of *Patch* v. *White.* 117 U. S. 210. This is a case which has been much criticised by other courts as announcing an extreme rule, and was decided by a court which stood five for the opinion, and four against it, but it is a well considered case, and announces the rule which the majority of this court thinks is most conducive to effectuating the right of making testamentary disposition of property. The syllabus in that case is as follows:

"1. In the construction of wills, a latent ambiguity may be removed by extrinsic evidence.

"2. A latent ambiguity may arise upon a will, when it names a person as the object of a gift, or a thing as the

subject of it, and there are two persons or things that answer such name or description; or it may arise when the will contains a misdescription of the object or subject.

"3. Where a latent ambiguity consists of a misdescription, if it can be struck out and enough remain in the will to identify the person or thing, the court will so deal with it; or if it is an obvious mistake, will read it as if corrected.

"4. Where the testator devised 'lot 6' in a certain block, to a brother, and disposed of the remainder of his estate to others, and it appeared that he did not own lot 6, but did own lot 3 in said block, and that lot 3 was otherwise properly described in the will, said lot 3 is held by this court to have been lawfully devised."

In volume 11, page 90, of Rose's Notes to the U. S. Supreme Court Reports will be found a collection of a number of cases citing, and generally approving, the view of the majority in that case.

Another case decided by the same court is the case of *Smith* v. *Bell*, 31 U. S. 68. In that case the testator had devised certain property to his wife and son, and the devise to his wife was so worded that if its language was given its ordinary interpretation, the son could take nothing under the will. In the opinion in that case, by Chief Justice Marshall, it was said:

The first and great rule in the exposition of wills (to which all other rules must bend), is that the intention of the testator expressed in his will shall prevail, provided it be consistent with the rules of law. (Doug. 322; 1 Black. Rep. 672). This principle is generally asserted in the construction of every testamentary disposition. It is emphatically the will of the person who makes it, and is defined to be 'the legal declaration of a man's intentions, which he wills to be performed after his death.' (2 Black Com. 499). These intentions are to be collected from his words, and ought to be carried into effect if they be consistent with law. * * *

In the construction of ambiguous expressions, the situation of the parties may very properly be taken into view. The ties which connect the testator with his lega-

tees, the affection subsisting between them, the motives which may reasonably be supposed to operate with him and to influence him in the disposition of his property, are all entitled to consideration in expounding doubtful words and ascertaining the meaning in which the testator used them. * * * No rule is better settled than that the whole will is to be taken together, and is to be so construed as to give effect, if it be possible, to the whole.''

After referring to the inconsistent provisions of the will, and after pointing out what the effect would be if the language which devised to the wife her interest was given the construction which such language would ordinarily have, but which was not there given it, because, to have done so would have defeated the purpose of the testator as manifested by the entire instrument, the court said:

''As this construction destroys totally the legacy, obviously intended for the son by his father, it will not be made unless it be indispensable. No effort to explain the words in a different sense can do so much violence to the clause as the total rejection of the whole bequest, given in express terms to an only son.''

(2) We must look to the will to determine the testator's intention, but in getting this view we should place ourselves where he stood, and should consider the facts which were before him in deciding what he intended by the language which he employed. If the rule were otherwise, the making of wills would be so difficult that the very purpose of permitting this method of disposition of property would frequently be defeated. The will now under consideration is wholly in the handwriting of a former Governor of this State, a man who was not a lawyer, but who had had much experience in public affairs generally, and a man whose place in the confidence and affection of the people of this State is firmly fixed. The will declares the purpose of its execution to be to divide the testator's property, which he owned as the result of his own accumulations, equally between his own heirs and those of his wife, and he has described lands which he evidently thought accomplished that result. Did he so

far fail to express his intention in his will, as that, in its construction, we must defeat its manifest purpose because of his inaccurate employment of language to accomplish that purpose?

(3-4) It is said that the devise of "the southwest part of section 31, 150 acres, in township 1, range 8 west," is not effective because the description is void. This section is crossed by Baker Bayou, and from the survey of it which we have before us, it appears that all of Governor Eagle's lands in the south half of the section lay west of this bayou, there being about twenty acres in the southeast quarter west of the bayou, and about 130 acres in the southwest quarter west of the bayou. This description and this acreage correspond with the description and acreage which appear in the receipts for taxes paid by the testator, although a survey made since the death of the testator shows the exact area to be 153 acres, instead of 150. The testator owned the north half of this section and included it in the part given the Oldhams by a proper description, and the only other land owned by him in this section was this southwest part consisting of 150 or 153 acres. Such a description would avoid a tax sale, because there we look only to the record of the sale, but here we may look to the testator's land book and tax receipts, and his deeds and plats to determine what he meant by the description he employed, and, when we have done so, all uncertainty passes away.

The trouble with the hundred acre tract is that it is described as being in range 8 west, when the land owned by the testator answering to the description used is in range 9 west. As has been said, the testator divided his lands into practically three parts, one of which went to his sister, Mrs. Mewer, another to the other Eagle heirs, and the third part to the Oldhams. The Oldhams were given lands in section 31, township 1 north, range 8 west, and in section 6, township 1 south, range 8 west, which lands are divided by the base line, and the range line divides this section 6 from section 1, township 1 south, range 9 west. Baker Bayou runs through all three of these sections, which constitute a solid body of land, and

if range 8 was intended, instead of range 9, then the 100 acres described as being in section 1 joins the land in section 6, about which section numbered 6 no question is made, as the Oldham title to the land in section 6 under the will is undisputed. These are matters which are plain to one familiar with land descriptions and the public surveys, but are confusing to others.

The remaining tract in controversy was described in the will as northeast northwest of section 5, township 1 south, range 8 west, which tract was not owned by the testator at the time the will was made nor at the time of his death. He did own, however, southeast northwest section 5, township 1 south, range 8 west, and if this was not the forty acres intended, then he has left that forty acres entirely isolated from all the other lands. Southeast northwest of section 5, if assigned to the Oldhams, makes a part of a compact body of land, while lands, which, without dispute, were given the Oldhams, lie between this forty acres and the lot of lands given Mrs. Mewer, and this forty-acre tract lies a mile and a half from the nearest tract constituting the body of lands given the other Eagle heirs.

A very well considered case which discusses the questions here under consideration, is the case of *Graves* v. *Rose,* 246 Ill. 76, 92 N. E. 601, 30 L. R. A. (N. S.) 303. A great many cases are cited and reviewed in that opinion. It is true the majority opinion in that case does not fully comport with the views which we have here expressed, but there was a strong dissenting opinion, in which three members of that court concurred, which expresses the better view, according to the opinion of the majority of this court, and the reasoning of this dissenting opinion supports the conclusion we have reached.

Another very interesting and well considered opinion is the case of *Stewart* v. *Stewart,* 65 N. W. 976, in which case the majority opinion gives support to the view of the majority in this case, and decides a point identical with the point in this case involving the misdescription

of the southeast quarter of the northwest quarter of section 5.

For the reasons stated, the majority of the court are of the opinion that the chancellor was correct in finding for appellee and in quieting his title against the claims of appellant.

Affirmed.

McCulloch, C. J., and Kirby, J., dissent in part.

### ON REHEARING.

Smith, J. (5) It is urged in the petition for rehearing that our refusal to reverse the judgment in this cause, and to remand it for a new trial, because of the error committed in transferring it to equity, overrules the opinions in the case of *Head* v. *Phillips,* 70 Ark. 432, and *Frank* v. *Frank,* 88 Ark. 1. No such purpose is entertained, and we think no such result is accomplished. We think our action is authorized by the opinion in *North American Trust Co.* v. *Chappell,* 70 Ark. 507, in which case the syllabus is as follows: "Though the trial court erred in transferring a law case to equity, and in dismissing the complaint upon the ground alleged in the decree, an affirmance will nevertheless be ordered if it appears that the dismissal of the complaint was proper upon another ground."

Under the statute this court reverses only for prejudicial errors, and, if the view of the majority of the court upon the main question is correct, a judgment must necessarily have been rendered in appellee's favor; consequently, no prejudice has resulted from the fact that the cause was not tried at law, and the motion for rehearing is therefore overruled.

McCulloch, C. J. (dissenting). It is too well settled for further controversy that a court of equity will reform a last will and testament only in the exceptional class of cases where the instrument represents a contract between the parties and a reformation will be decreed so as to make it conform to the intention of the testator in carrying out the contract. Where there is no contract,

reformation will not be decreed for the obvious reason that a gift by will is purely voluntary, and if the language used in the instrument is insufficient to express the will of the donor with sufficient clearness to indicate his intention, the gift must fail.   This court has steadily adhered to the rule that the intention of a testator must be gathered from the language employed in his will and not from oral testimony.   *Cook* v. *Worthington,* 116 Ark. 328; 173 S. W. 395.   Courts may construe wills, but not reform them; and the effect of the decision of the majority is, it seems to me, to reform the will of the testator rather than to construe it, and they have considered oral testimony for that purpose.

In reaching the conclusion, the majority seem to be controlled entirely by the case of *Patch* v. *White,* 117 U. S. 210.   That case announces a correct principle, I think, in laying down the rule that "where a latent ambiguity consists of a misdescription, if it can be struck out and enough remain in the will to identify the person or thing, the court will so deal with it; or if it is an obvious mistake, will read it as if corrected."   The case has been frequently cited and more often criticized than approved; but it is, to say the least of it, very doubtful whether the facts of the case warranted the application of the principle stated above.   However, that principle has no application to the facts of the present case, at least as to two of the tracts of land involved in the controversy.

I agree that there is sufficient description to uphold the decree as to the tract referred to as the Baker's Bayou tract, but as to the other tracts in controversy it seems clear to me that to substitute a correct description for the improper ones used in the will amounts to nothing short of reformation of the will to conform to what the oral testimony shows to have been the real intention of the testator.   We have before us nothing to explain or alter the imperfect descriptive words used by the testator except the bare fact that he did not own the lands answering the descriptive words of the will, but did own other lands which he doubtless intended to de-

scribe. The only fact stated in the opinion of the majority, as affording a basis for upholding the decree is that the testator did not own the hundred-acre tract described in the will as being in range 9 west, but did own a tract in range 8 west answering the description except as to the township and range. It is difficult to understand how there can be a substitution of descriptive words for the purpose of conforming to a proper description of the tract that the testator owned unless the court resorts to the remedy of reformation or permits oral testimony to vary the terms of the will. There is no escape from the conclusion, it seems to me, that when the court undertakes to substitute words, it applies a remedy which is in effect a reformation of the terms of the will or permits oral testimony to vary them. This is not a case like *Patch* v. *White,* where the property devised is described in two methods in the will, one of which is correct and the other incorrect, and the court can disregard the incorrect description, for we have only one description here, and when that is discarded there is nothing left. The process of the court is therefore substitution pure and simple, based upon oral testimony. Nor is this a case where you can treat the error as an obvious mistake, for it will not do to change a description merely because the testator does not own the land which he described in the will, but does own another tract which it is thought he intended to describe.

In the very recent case of *Cook* v. *Worthington, supra,* we said: "Where there is an obvious clerical misprision in the use of a word, or where the words, by reference to the context can better effectuate the intention of the maker by transposition to other parts of the instrument without destroying the sense, or where there is an obvious omission of a word or words, shown by reference to the other words used, then the rules of construction will permit the court to transpose or to supply these in order to effectuate the manifest purpose of the maker of the instrument, when ascertained from the instrument

taken as a whole. But further than this the court will not go.''

Another tract in controversy is the southeast quarter of the northwest quarter of section five in township one south, range eight west, which the court holds was intended to answer the description in the will of ''the northeast quarter of the northwest quarter of section five.'' The only reason for concluding that the testator, when he described the northeast quarter of the northwest quarter, meant the southeast quarter of the northwest quarter is that he owned the southeast quarter but did not own the northeast quarter. This is, I think, merely a substitution which amounts to a reformation of the will merely upon the ground that the description should be altered so as to include the tract which the testator owned and which the oral testimony is sufficient to show that he intended to devise. The cases cited on appellant's brief demonstrate very clearly the fallacy of the position taken by the majority in holding that the words of description used by the testator can be wholly discarded and other words substituted merely because it is shown that he owned property answering to the substituted words of description and does not own land which is described by the words employed in the will.

It is a dangerous thing, I think, to tamper with the unambiguous words of a last will and testament, for to do so is to set aside what the testator himself did for the purpose of substituting what the court conceives to be the thing intended by the testator. The safe rule is to follow the language which is clear and unambiguous even though the acceptance of it results in an ineffectual attempt on the part of the testator to dispose of his property.

Mr. Justice KIRBY concurs.