## MOORE *v.* AVERY.

### Opinion delivered November 22, 1920.

1.  WILLS—LIFE ESTATE WITH POWER OF DISPOSAL.—Under a will devising a life estate in land with remainder to the legitimate heirs of the body of the devisee, and with power to dispose of the land by will in case the devisee dies without such heirs of the body, the devisee was empowered to dispose of the property by will.

2.  WILLS—CONSTRUCTION.—In construing a will, the paramount rule is to arrive at the testator's intention, which must be done from the language used where it is plain and free from ambiguity; parol evidence being admissible in aid of construction only when the language used is doubtful or susceptible of two meanings.

3.  WILLS—CONSTRUCTION.—Where one having a life estate in certain land with absolute power of disposing of it by will con-

tracted with another who furnished the money to improve such land that he would devise the land to him, and in pursuance thereof devised to the latter all of his property, real, personal and mixed, he will be held to have devised the property of which he had the power of disposition.

Appeal from Garland Chancery Court; *J. P. Henderson*, Chancellor; affirmed.

### STATEMENT OF FACTS.

Appellants brought this suit in equity against appellee to declare void a will made by Harry Moore, deceased, in favor of the defendant James Avery.

Appellants allege that they are the owners of the property involved in this suit by reason of being the heirs-at-law of Harry Moore, deceased, and further allege that by contract with each other they have agreed that Mary Haley and Ed Averitt, two of the appellants, shall have a one-half interest in the property, and that the other one-half interest shall vest in Harry Moore, an illegitimate son of Harry Moore, deceased.

It is agreed by the parties that the findings of fact made by the chancellor are correct, and his findings are substantially as follows: Dinah Averitt originally owned the property in controversy. On the 30th day of May, 1895, she executed her last will and testament, whereby she devised the property in controversy to her grandson, Harry Moore. The clause in question in the will is as follows:

"For and during the term of his natural life, and after his decease to the heirs of his body (being legitimate and born in lawful wedlock), their heirs and assigns forever, in equal shares, as tenants in common, and in the event the said Harry Moore dying without heirs of his body surviving him as aforesaid, then said land and premises shall go to and pass by the execution and operation of this will to such person or persons as my grandson, Harry Moore, as aforesaid, by his last will and testament shall direct and appoint and for the uses, pur-

poses, trusts and limitations herein contained and set forth.''

By a subsequent clause she devised to Harry Moore in fee simple other real estate owned by her in Hot Springs, Arkansas. After her death Harry Moore, the devisee in the will, took possession of the property. He sold the property which was devised to him in fee. A fire destroyed the buildings on the property involved in this lawsuit. Harry Moore was in ill-health and without means with which to rebuild. In order to do so, he asked a friend to lend him enough money to build a house on the property in controversy, and told his friend that he would make him a will devising him the property in controversy in fee if he would lend him the money. It was understood between them that Harry Moore did not have the fee in the property, but only the power to dispose of it by will and for this reason he was unable to make a present conveyance in order to secure money to rebuild on the property. In order to secure money to rebuild and to obtain something to live on for the balance of his life, he agreed to make a will in favor of James Avery if the latter would advance him the money necessary to rebuild on the property. It was understood that the money so advanced was not a loan to Harry Moore which was intended to be repaid, but that it was given him by James Avery in anticipation that Harry Moore would use it in building a house on the property in question and would execute a will in Avery's favor so that the latter would get the property at Moore's death. Moore executed a will which is as follows:

''Know All Men by These Presents: That I, Harry Moore, domiciled and residing in the city of Hot Springs, in the State of Arkansas, and being an unmarried man more than twenty-one years of age, and being of sound mind and memory, do hereby make and publish this my last will and testament, and hereby revoking any and all other or former wills by me heretofore made.

"*First.* Having no wife or children, and having no living descendant of a deceased child or children, and having no living parent or parents, nor a living ancestor or ancestors of parent or parents, all of my property, real, personal and mixed, including goods and chattels, lands and tenements, rights, credits, and choses in action, situated in the State of Arkansas, or elsewhere, I will, devise and bequeath to my friend and relative, James Avery, of the city of Little Rock, in the State of Arkansas, for his sale and use and benefit the same as if said property had been conveyed to the said James Avery by me while in full life.

"*Second.* I hereby nominate, constitute and appoint my said friend and relative, James Avery, to be sole executor of this my last will and testament and direct that he be required to give only such bond as is in the judgment of the court may be required for the protection of the creditors of my estate, if there should be any creditors.

"In testimony whereof, I have hereunto set my hand and seal, and publish and declare this to be my last will and testament, in the presence of two witnesses named below, on this the 24th day of Janaury, 1914."

Harry Moore died and James Avery claims the property under this will. Hence this lawsuit.

The chancellor found the issues in favor of the defendant, and the complaint of the plaintiffs was dismissed for want of equity.

The case is here on appeal.

*R. G. Davies,* for appellants.

The will of Moore was intended as a mortgage to secure defendant in whatever amount of money he might advance to rebuild the houses and, being so intended as a mortgage, it is not a will that can be enforced, and is therefore void. *The money was not loaned* but advanced for the purpose of rebuilding on the property, and was not to be repaid, but in consideration of said advancement defendant was to receive a will giving him title to

said property at Moore, Sr.'s, death. The only question is, can such an agreement be enforced? It is settled in this State that all persons have an untrammeled right to dispose of their property by will as they please, if within the statutory limitations; that testators are not required by law to do exact justice to expectant relations, and their motives or partialities, affections or resentments, are not subject to examination by the courts. 102 Ark. 30; 9 Ann. Cases 943, notes; Ann. Cases B 1912, 422; 139 Am. St. Rep. 73; 126 Ark. 503; 129 Mass. 435; 44 Am. Rep. 780. Under these authorities, Moore, Sr., under the will of Dinah Averitt, having no legitimate children, had authority to make the agreement with defendant to make the will to him he did make. 87 Ark. 243. Under the will of Dinah Averitt, Harry Moore, Sr., could not lawfully execute such an instrument as the one under which defendant claims title. 31 Cyc. 1137-1144. The will of Dinah Averitt did not authorize Moore, Sr., to either mortgage or sell the remainder of the estate for his own benefit, *and that is what* he did. 112 Ark. 527; 51 *Id.* 61.

The money was *advanced,* and was a loan to be repaid, and the will was intended as a security for a loan. 56 Am. Dec. 451. The will of Moore, Sr., was intended as a mortgage to secure defendant in whatever amount he might *advance* to him to rebuild the houses, and, thus being a mortgage, or so intended, it is not a will and can not be enforced and is void. It was not a will; it was a conveyance, or mortgage, which Moore, Sr., had no right to execute, and it was not even an execution of the power of appointment contained in the will of Dinah Averitt. It could not be a mortgage until it was recorded, and it was not acknowledged. 87 Ark. 243 does not apply, and does not sustain the chancellor in his findings, nor does 102 Ark. 30 sustain the chancellor, nor 112 *Id.* 527. This case differs from all those cases cited.

Where a testator gives a life estate only, with power to the life-tenant to *convey* the estate *absolutely,* the life-tenant may defeat the estate of the remainderman by

the exercise of the power of disposal during the lifetime. Where the whole will is considered and read together, it was the manifest intention to give the wife a life estate, with the *added* power of disposing of the whole estate during her lifetime, and having exercised this power during her lifetime, the estate vests in those to whom she granted it. 112 Ark. 527. The authorities cited by the chancellor do not sustain him but are to the contrary. The correct rule is stated in 49 Pac. 404; 75 Ky. 1323. The money was *advanced* by Avery and the instrument was executed as a security for repayment, or was a conveyance *in praesenti* of Moore's interest. 56 Am. Dec. 451; *Ib.* 457; 61 Ga. 462; 27 Am. Dec. 590-601; 15 Am. Dec. 48. The estate was not divested by the will of Moore, Sr., as shown by the will itself and the authorities cited.

*Philip McNemer,* for appellee.

1. The will of Dinah Averitt shows that Harry Moore, Sr., can will this property to whoever he wishes. It is a life-estate in law, with absolute power of disposal by will, and is valid. 112 Ark. 527; 126 *Id.* 216; 87 *Id.* 243; 22 Am. & E. Enc. Law 1133; 129 Mass. 453; 85 *Id.* 363.

2. The intention of Aunt Dinah's will is not violated in Moore, Sr.'s, will to James Avery. 31 Cyc. 1137; 2 Pom., Esq. Jur., par. 920, p. 1655. Appellee rests upon the will as probated and appellants can not question it. Appellants have not offered to return one cent of the $3,500 paid out by appellee, but are still seeking this property, and they are without equity, and the findings of the chancellor are correct upon any theory of the case.

Hart, J. (after stating the facts). It is conceded by counsel on both sides that the only issue to be decided is whether or not the property has legally passed to James Avery under the will referred to in the statement of facts. In the first place, it is contended by counsel for the plaintiffs that the will of Dinah Averitt did not give

to Harry Moore the power to dispose of the property in question. Counsel relies upon the cases of *Patty* v. *Goolsby,* 51 Ark. 61, and *Douglass* v. *Sharp,* 52 Ark. 113. We do not think these cases are applicable. There is nothing in either case to indicate that the testator intended to give to the life-tenant the absolute power to dispose of the fee in the estate. Such intention is clearly indicated in the will of Dinah Averitt. In this respect the case is ruled by that of the *Union & Mercantile Trust Co.* v. *Hudson,* 143 Ark. 519. In that case the clause under consideration was as follows:

"*Second.* I give, bequeath and devise all the rest and residue of my estate owned by me at the time of my death, real, personal and mixed, to my mother, Charlotte D. Turner, to have, hold, use and enjoy during her natural life, it being my desire that she shall have the absolute right to sell or incumber it without any restrictions whatever."

The clause in the instant case which we have copied in our statement of facts, and need not repeat here, in plain language gives Harry Moore the power by his last will and testament to dispose of the property in question. It first gives it to him for his natural life, and, in the event of his dying without heirs of his body surviving him, then the property shall go to such persons as Harry Moore by his last will shall direct and appoint.

Having decided that the will of Dinah Averitt gives to Harry Moore the power to dispose of the property, we come to the question of whether or not the will of Harry Moore devised the property to James Avery. We think it does.

It is contended by counsel for plaintiffs that it does not, because the devise shown by the first clause of the will is, "All of my property, real, personal and mixed, * * * I will and devise to my friend and relative James Avery," etc. In construing a will the paramount rule is to arrive at the intention of the testator, and this must be done from the language used, where it is plain and

free from ambiguity. Parol evidence is admissible in this class of cases, to the same extent as in other cases, in aid of the construction of written instruments, when the language used is doubtful, or susceptible of two meanings, and no further. You may show the conditions as they exist at the time of the execution of the will and the surrounding circumstances, so as to place the court in the position of the testator. *Fitzhugh* v. *Hubbard*, 41 Ark. 64, and *Eagle* v. *Oldham*, 116 Ark. 565. In the application of this rule in the instant case, it is proper to consider the conditions as they existed at the date of the execution of the will, and the surrounding circumstances, in order to find out what was intended by the testator. The record shows that Harry Moore had conveyed by deed all of the property devised to him in fee by his grandmother, Dinah Averitt, and that the building on the property in question, which had been devised to him for his natural life by his grandmother, had been destroyed by fire. Harry Moore was ill and infirm, and had no means with which to rebuild on the property or to support himself for the remainder of his life. He thought that he had the power to dispose of the property in question under the will from his grandmother. He offered to make a will in favor of a friend to this property if his friend would advance him money with which to rebuild. His friend declined to make the advance because he was afraid that Harry Moore might change his mind and make another will devising the property to others. Finally, he agreed with James Avery, a friend and relative, that, if the latter would advance him money with which to rebuild, he would execute a will devising the property in question to him in fee simple. This agreement was carried out by the execution of the will in question. The question of the specific enforcement of an agreement of this sort does not arise in this case. The agreement was carried out by the execution of the will, and Harry Moore died without revoking it. Hence the only question for our consideration is whether or not the language of the will, together with

surrounding cimcumstances, is sufficient to devise the property in fee to James Avery. We think so. The testator devised all of his property, real, personal and mixed, to his friend and relative, James Avery. The word "all" was sufficiently broad and comprehensive to include any property to which the testator had the power of disposition. The will of Dinah Averitt gave Harry Moore the absolute power to dispose of the property without any restrictions whatever, and the language used, "all my property," was sufficiently compresensive to include the property in question. In short, if Harry Moore had the power to dispose of the property by will, he did dispose of it by devising all of his property to his friend and relative, James Avery.

There is nothing in the language of the will indicating a contrary intention on his part.

It follows that the decree must be affirmed.