Rufty *v.* Brantly.

4-6693                                        161 S. W. 2d 11

Opinion delivered April 6, 1942.

*Buzbee, Harrison & Wright,* for appellant.

*Rose, Loughborough, Dobyns & House,* for appellee.

Smith, J.  This litigation involves the construction of the last will and testament of Texanah Susan Gooch, who died August 9, 1935, at an advanced age.  Two children were born to her first marriage, a son named Charles and a daughter named Mary.  Upon the death of her first husband she married a second time, but no child was born of that union.  She survived her second husband also.

Her son, Charles, died single and intestate November 3, 1940, and was survived by a son named Alfonso and a daughter named Edna.  The mother of these children obtained a divorce from Charles, their father, and remarried before her husband knew a divorce had been granted.

The undisputed testimony is to the effect that Mrs. Gooch became estranged from these grandchildren, and that this estrangement continued for many years before her death, and it is indubitably shown, indeed, it is not disputed, that at the time of the execution of the will, and continuously thereafter until the time of her death, Mrs. Gooch was much embittered toward these grandchildren.

The will under review reads as follows:  ''I, Texanah Susan Gooch, of the city of Little Rock, Arkansas, do hereby make, publish and declare this my last will and testament in manner and form following:

''One:  I direct that all my just debts and funeral expenses be paid as soon after my demise as can conveniently be done.

''Two:  I give, devise and bequeath to my daughter, Mary Rufty Brantly, the following real estate:  Street number 501 East Eighth and street number 809 Commerce.

''Three:  I give, devise and bequeath to my daughter, Mary Rufty Brantly, all my personal property including moneys of which I may die seized and possessed.

"Four: I give, devise and bequeath to my daughter, Mary Rufty Brantly, house and lot numbered 811 Commerce street and house and lot numbered 415 East Eighth street to be held in trust for the use and benefit of my son, Chas. H. Rufty, during his entire life and he shall be entitled to receive all the rents and revenues derived from said property, he being entitled to have full and complete control and management of said property.

"Five: I give, devise and bequeath to my grandson, Alfonso Rufty, the sum of one dollar to be paid out of my estate after my decease.

"Six: I give, devise and bequeath to my granddaughter, Edna Rufty, the sum of one dollar to be paid out of my estate after my decease.

"Seventh: I hereby revoke all former wills and other testamentary disposition at any time heretofore made by me. In witness whereof I hereunto subscribe my name at 501 East Eighth street, Little Rock, Arkansas, this 1st day of May, 1931, in the presence of Minnie W. DePoyster, residing at 416 St. Louis avenue, Fort Worth, Texas, and John H. Martin, residing at 501 East Eighth street, Little Rock, Arkansas, whom I have requested to become attesting witnesses hereto.

"Texanah Susan Gooch."

After the will had been probated the daughter, Mary, brought this suit against the grandchildren to quiet her title to the real estate described in the will.

After hearing the undisputed testimony above summarized the court found that the said testatrix intended to, and did, devise to the plaintiff, Mary Rufty Brantly, in fee simple, the property described in said will as 811 Commerce street and 415 East Eighth street, Little Rock, Arkansas, subject to the life estate of her son, Charles Rufty. It was further decreed that the children of Charles had no right, title or interest whatever in said property, and from that decree is this appeal.

The only portion of the will in dispute is the fourth paragraph thereof, and it is the insistence of appellants that the effect of this paragraph is to give their father,

Charles, the absolute title upon the death of the testatrix to the lots described in this paragraph four.

This was certainly not the intention of the testatrix if we may consider and give any effect to the testimony showing the state of the testatrix's feelings to her son and daughter and her grandchildren; but appellants insist that we may not consider this testimony in construing the will, and that we may only consider and construe the language appearing in the will.

Such testimony is incompetent to show the testatrix's intention in the disposition of her property; but we think it is competent to show the state of her feelings toward the persons who claim to be the subjects of her bounty, and if there is ambiguity in the will, and there is uncertainty as to the meaning of the language employed, the court may place itself in the position of the testatrix at the time of the execution of the will and consider all the facts and circumstances known to her when the will was made in determining the meaning of the language which she employed.

In the case of *Eagle* v. *Oldham,* 116 Ark. 565, 174 S. W. 1176, we quoted from the opinion of Chief Justice MARSHALL in the case of *Smith* v. *Bell,* 31 U. S. 68, 8 L. Ed. 322, as follows: "In the construction of ambiguous expressions, the situation of the parties may very properly be taken into view. The ties which connect the testator with his legatees, the affection subsisting between them, the motives which may reasonably be supposed to operate with him and to influence him in the disposition of his property, are all entitled to consideration in expounding doubtful words and ascertaining the meaning in which the testator used them. . . . No rule is better settled than that the whole will is to be taken together, and is to be so construed as to give effect, if it be possible, to the whole."

For the reversal of the decree here appealed from it is insisted that by the terms of paragraph four there is no limitation over in favor of appellee, and that she is, at most, the nominal trustee in a passive trust, and that under the English Statute of Uses, which came to

us as a part of the common law, the trust is executed and the title conveyed to the trustee vests in the beneficiary of the trust.

The case of *Randolph* v. *Read,* 129 Ark. 485, 196 S. W. 133, sustains that contention. But even so, this rule does not vest in the beneficiary any other or greater interest than that conveyed to the trustee. On the contrary, when the Statute of Uses executes a passive trust, the beneficiary for life thereunder obtains a legal life estate and the beneficiaries of the remainder become legal remaindermen. Section 137, Patton on Titles, p. 454; § 67, Scott on Trusts, vol. 1, p. 410; *McAfee* v. *Green,* 143 N. C. 411, 55 S. E. 828; *Kirton* v. *Howard,* 137 S. C. 11, 134 S. E. 859.

Appellants insist that under paragraph four the testatrix's son, their father, took the title in fee simple upon the death of the testatrix, and in support of this contention they chiefly rely upon the following statement appearing in the opinion in the case of *Union Trust Co.* v. *Madigan,* 183 Ark. 158, 35 S. W. 2d 349: "In construing wills, the general rule is that a gift for life without a limitation over passes a fee in real estate and an absolute interest in personalty, even though words denoting a life estate was intended were used. However, a clear gift to one for life, without a limitation over, is held not enlarged to a fee by such omission, unless a declared purpose is shown to dispose of all the testator's estate by will instead of creating an intestacy as to the remainder. Thompson on Construction of Wills, § 428, p. 551; *Byrne* v. *Weller,* 61 Ark. 366, 33 S. W. 421."

This is, of course, a mere rule of construction, to be applied only in the circumstances stated, without the application of which the testator's intention may not be determined. It is a rule to be applied only in the case of conflicting clauses, which may not otherwise be reconciled, as was the fact in the case from which we quote. The rule is one of narrow and limited application. If the rule is not limited to the circumstances stated, but is to be applied to all cases, it follows that any devise of a life estate, without a limitation over, operates to

create a fee simple estate, and that holding would result in its application to situations which lack the conditions that call the rule into existence.

For reasons later to be enlarged upon, we think there was a clear devise to the son of a life estate only, and there was no limitation over, and there is no declared purpose to dispose of all the testatrix's estate. For these reasons this very limited rule has no application here.

All the cases are to the effect that the primary purpose of construing a will is to arrive at the testatrix's intention in making it, and the rule of construction applicable in all cases is that the will should be read in its entirety, from its four corners, as many cases express the thought.

When the will under consideration is thus read, what do we find? We know that the scrivener who prepared the will knew what language to employ to devise an estate in fee simple. Paragraph two of the will makes that fact certain. By it an estate in fee was devised to the daughter to the two lots there described. Now, if it was the testatrix's intention to devise her other two lots to her son in fee, why was not the same simple and unambiguous language employed as was used in paragraph two to devise an estate in fee to the daughter? Why the circumlocution of creating a passive trust to devise a fee simple estate?

Paragraph four of the will is ambiguous. Appellants insist, first, that paragraph four devised to their ancestor an estate in fee simple. They further insist that if the fee title was not devised to their ancestor, it was not devised to anyone, and that a partial intestacy results, in that, the remainder existing after the termination of the life estate was not disposed of by the will, in which event appellants, as heirs of their father, are entitled to a one-half interest in this remainder.

We do not agree. It is not necessary to resort to the presumption against partial intestacy to find that the testatrix disposed of her whole estate, including her personal property. Leaving out of consideration for the

present the testimony showing the state of the testatrix's feelings towards her grandchildren, we know that, as a practical matter, the usual and ordinary means of disinheriting one, who would otherwise be an heir, is to bequeath to that person a dollar or some other nominal sum of money. That bequest was made to each of the grandchildren, and we think the conclusion is inescapable that the testatrix did not intend her grandchildren to have any other or greater interest in her estate.

We think it certain also that the testatrix did not devise to her son the fee title to the property described in paragraph four, as it was her expressed intention that her son should have the use and benefit of this property during his entire life and be entitled to receive all the rents and revenues derived from said property, with the right to full and complete control and management of said property for his entire life. This is wholly inconsistent with the theory that she devised the fee to her son.

It will be observed that the opening clause of paragraph four is exactly the same as the opening clause of paragraph two, and it is certain and unquestioned that the purpose of this clause in paragraph two was to devise an estate in fee simple. Was not the same purpose intended by the use of the same language in paragraph four? Is this not more reasonable than to suppose that the same words were used in paragraph four as a mere introduction to the creation of a passive trust?

Paragraph four is susceptible of more than one construction. One is that the fee title was devised to the daughter, subject to a life estate in favor of the son. Another construction is that paragraph four devised only one estate, to-wit: An estate in fee in favor of the son, this being done by the unusual device of creating a passive trust. An estate in fee might be devised through the creation of a passive trust; but this method of accomplishing that result is so unusual as to be very highly improbable. Another construction is that a life estate was devised without disposition of the remainder. As to that construction it must be remembered that there

is a strong presumption against partial intestacy, and the will is to be so interpreted as to avoid even partial intestacy, unless the language of the will compels a different construction. *Barlow* v. *Cain,* 146 Ark. 160, 225 S. W. 228.

What then does the language employed in paragraph four mean? To answer that question, and to determine the meaning of the language employed we think it proper and necessary to take account of the relation of the testatrix to the persons who in the absence of a will would have inherited as heirs at law. This testimony is to the undisputed effect that for many years Mrs. Gooch had resided with her daughter; that her son was improvident and to some extent dissipated; that the son was the father of two children, who would be the heirs of their father if he were given an estate in fee, a result the testatrix did not intend, as indicated by the bequest of one dollar to each of these grandchildren, and as is conclusively shown if we may consider the testimony showing the attitude of the testatrix to her grandchildren.

Must we close our ears to testimony which, if heard, removes all ambiguity and doubt as to the meaning of paragraph four? In the recent case of *Murphy* v. *Morris,* 200 Ark. 932, 141 S. W. 2d 518, we quoted with approval the following statement from § 244 of the chapter on Wills, 28 R. C. L. 270: " 'While parol evidence is not admissible to show what a testator intended to write, it may be admitted in a proper case, where the effect of it is merely to explain or make certain what he has written. In ascertaining the testator's intent the words of the will are to be read in the light of the circumstances under which it was written, and the court may put itself in the place of the testator for the purpose of determining the objects of the testator's bounty or the subject of disposition. It is proper to take into consideration all the circumstances under which the will was executed, including the condition, nature and extent of the testator's property, and his relations to his family and to the beneficiaries named in the will. Even the motives which may reasonably be supposed to operate with him and influence him in the disposition of his property are

entitled to consideration in ascertaining the meaning of the testator. So evidence is admissible as to the circumstances surrounding the subject-matter of the gift. Accordingly the courts in construing a will have taken into consideration such matters as the financial condition of the beneficiary, when it appears that this was known to the testator. The relative amount of advancements and the differences in value of portions of land devised to different children are also proper subjects for consideration. The rule is, however, inflexible that surrounding circumstances cannot be resorted to for the purpose of importing into the will any intention which is not there expressed, and when a will is not ambiguous in terms it is unnecessary to resort to testimony as to the surrounding circumstances in order to ascertain its meaning'." The cases of *Moore* v. *Avery,* 146 Ark. 193, 225 S. W. 599; *Piles* v. *Cline,* 197 Ark. 857, 125 S. W. 2d 129; *Ellsworth* v. *Ark. Nat'l Bank,* 194 Ark. 1032, 109 S. W. 2d 1258, are to the same effect.

"In the case of *Eagle* v. *Oldham, supra,* it was said: "We must look to the will to determine the testator's intention, but in getting this view we should place ourselves where he stood, and should consider the facts which were before him in deciding what he intended by the language which he employed. If the rule were otherwise, the making of wills would be so difficult that the very purpose of permitting this method of disposition of property would frequently be defeated."

The conviction abides that by paragraph four the testatrix intended to devise the fee title to the lots there described to her daughter, subject to a life estate in favor of her son.

This was the construction given the will by the court below, and the decree based upon that construction will be and is affirmed.