SHAW *v.* SHAW, EXECUTRIX.

5-628                                              276 S. W. 2d 699

Opinion delivered March 21, 1955.

[Rehearing denied April 18, 1955.]

*House, Moses & Holmes* and *E. B. Dillon, Jr.,* for appellant.

*Catlett & Henderson,* for appellee.

WARD, J. On this appeal appellant challenges the decree of the trial court interpreting certain provisions in the last Will and Testament of Percy A. Shaw. Shaw died April 7, 1954, and his Will was executed March 11, 1943. Appellant is the widow of the deceased.

The testator left surviving him, in addition to his widow, a sister, Helen E. Shaw, and two daughters by a former marriage, *viz.*: Norma Jean (Shaw) Smock and Dorothy Elizabeth (Shaw) Dempster.

In setting out the material portions of the testator's will some of the items will be stated in substance and some will be quoted, as indicated.

1. "I hereby nominate and appoint my sister, Helen E. Shaw, as Sole Executrix, to carry out and execute the provisions of this Will."

2. (Certain insurance policies are left to his widow.)

3. (Real estate in Lonoke County is given to his daughter, Norma Jean.)

4. (Real estate in Pulaski County is given to his daughter, Dorothy Elizabeth.)

5. ($500.00 is given to testator's sister, Helen E. Shaw.)

6. "I give and bequeath all of the **personal property** and good will of the business, known as Shaw Gas & Plumbing Company, including, stock, equipment, furniture and fixtures, cash, accounts receivable and any other assets, (but subject to bills payable), to the following named persons, in the percentages set opposite their respective names:

To my wife, Bessie Corpier Shaw      One Third;
To my daughter, Dorothy Elizabeth Shaw      One Third;
To my daughter, Norma Jean Shaw      One Third."

7. "It is my desire that the business, consisting of the property as mentioned above, be held in TRUST and

be operated as a business by the following named Trustees:

1. Bessie Corpier Shaw

2. Helen E. Shaw

3. The third Trustee to be selected by these two Trustees from among my older employees."

(Also in this item the testator gives directions concerning the appointment of trustees in case of death and concerning certain policies to be followed in conducting the business.)

8. (Concerns funeral expenses and payment of bills.)

9. (Concerns certain instructions to the trustees.)

10. (Concerns tenure of the trusteeship and liquidation of business.)

11. (Gives all real estate not mentioned above equally to his widow and two daughters.)

12. "All of my personal property, *not connected with the business,* I bequeath to my daughter, Norma Jean Shaw, with the request and desire that she distribute at least a part of same to other relatives and friends." (Emphasis supplied.)

*Inventory.* According to the inventory the testator left an estate of a total value of $78,435.80, of which $41,-964.64 consisted of real property and the balance was personal property. The different items were listed, substantially, as follows:

1. *Real Estate.*
(a) Farm in Pulaski County, $6,000.00.
(b) Farm in Lonoke County, $4,000.00.
(c) Part Lots 11 & 12, Block 342, Original City of Little Rock, $24,000.00.
(d) Part Lots 11 & 12, Block 342, Original City of Little Rock, $7,964.64.

2. *Personal Property.*

(a)   Numerous personal effects such as guns, jewelry, furniture and a 1950 Willys Jeep (valued at $500.00), totaling $4,264.11.

3.   *Other Tangible Personal Property.* Testator had for many years operated, as sole owner, a plumbing business in Little Rock under the firm name of "Shaw Gas & Plumbing Company." The following items are listed as assets of this company:

"Assets of Shaw Gas & Plumbing Company

| | |
|---|---|
| Merchandise inventory | $12,841.78 |
| Cash deposited with Commercial National Bank, Little Rock | 868.63 |
| Cash in time deposit with Commercial National Bank of Little Rock | 118.15 |
| Accounts Receivable   Accounts Payable $1,414.63 | 5,443.58 |
| Tools and Equipment | 524.34 |
| Furniture and Fixtures | 358.94 |
| Stationery and Stamps | 165.00 |
| Automotive Equipment | 2,430.00 |
| | $22,750.42" |

4.   *Intangible Personal Property.* Under this heading is listed $4,424.32 on deposit in the Worthen Bank and Trust Company and Common Stock in a number of companies valued at $3,919.36, making a total of $8,343.68.

"SUMMARY OF INVENTORY

| | |
|---|---|
| Total Real Property | $41,964.64 |
| Total Personal Property | 36,471.16 |
| | $78,435.80" |

*The controversial issue.* By reference to the Will it is seen that Item 6 gives one-third of the Shaw Gas & Plumbing Company  hereafter referred to as the Company  to his widow, the appellant herein, and one-third to each of the daughters; and that Item 12 gives all per-

sonal property, *not connected with the Company,* to the daughter, Norma Jean. Consequently it becomes important to know exactly what items of personal property shall be considered as belonging to the Company. It is obvious of course that a greater value attached to the Company will result in a financial benefit to appellant and just the reverse to Norma Jean.

Appellee, Helen E. Shaw, as administratrix, filed a petition in Chancery Court in which she sets out as "Exhibit B" a list of personal properties valued at $7,219.79 and asks the court to determine whether said personal property items should be classified as belonging to the Company or whether they are given to Norma Jean under Item 12 of the Will. The following is a list of the properties set out in said "Exhibit B."

Cash deposited in savings account with Twin City National Bank, North Little Rock, Arkansas, under the name of Percy A. Shaw    $1,279.88

Cash deposited with Republic National Bank, Dallas, Texas, under the name of Percy A. Shaw    1,137.43

Contract No. G-352027 issued by Investors Diversified Services, Inc., in the name of Percy A. Shaw    2,156.24

Stocks held in name of Percy A. Shaw:

   10 shares—L. S. Starrett Co.    430.00

   10 shares—Standard Railway Equipment Manufacturing Co.    125.62

   20 shares—Crane Company    662.50

   20 shares—Pacific Tin Consolidated    146.25

   20 shares—Libby, McNeil & Libby    180.00

   10 shares—American Smelting & Refining Co.    383.12

   10 shares—Nash Kelvinator Corp.    218.75

1 1950 Willys Station Wagon, motor No. P10-982 registered in the name of Percy A. Shaw    500.00

Total    $7,219.79"

Bessie C. Shaw, appellant here, filed a response to the petition stating that the items of personal property listed in "Exhibit B" set out above were connected with the business of the Company within the terms of Item 6 of the Will and asks that they be so classified. The two daughters of the testator filed a response in which it was contended that the articles mentioned in "Exhibit B" should not be considered as a part of the Company, but should be disposed of in accordance with the provisions of Item 12 of the Will.

The chancellor, after hearing the testimony, held that the disputed items were not a part of the Company but should go to Norma Jean (Shaw) Smock in accordance with the provisions of Item 12 of the Will. From this decision Bessie C. Shaw prosecutes this appeal.

*Appellant's testimony.* The only testimony introduced in the trial court was that presented by appellant. The principal oral testimony was given by Mrs. Audry Daugherty who was the full time bookkeeper for the Company from 1947 to 1951 and part-time until the testator's death. Eighteen exhibits were introduced consisting of company ledger sheets, pass books, company checks, personal property assessment forms, etc. From this testimony and these exhibits appellant, to sustain her position, shows the following substantial factual situation: Percy Alan Shaw was the sole proprietor of the Shaw Gas & Plumbing Company and had absolute control over its activities. The business was not a legal entity and for all practical purposes testator was the business. Apparently the only set of books kept by the testator was that kept for the Company. In conducting the Company business testator had on hand at his established place of business merchandise in the amount of approximately $12,000.00, tools and equipment, furniture and fixtures, and certain trucks which he used strictly for business purposes. The inventory showed that the Company carried a checking account in the Commercial National Bank and also a time deposit account in the same bank. The testator also carried accounts in his own name in different banks as shown in "Exhibit B."

All the money used by the testator in establishing the bank accounts and in purchasing the stocks above referred to was taken from earnings of the Company and notations of these transactions appear on the books kept at the Company office.

Appellant makes a clear and able argument, based on the testimony and the exhibits, to show that the trial court was in error in concluding that the items listed in "Exhibit B" were not connected with or a part of the Shaw Gas & Plumbing Company within the purview of Item 6 of the Will. However, after a careful study of the record, we cannot agree with appellant's argument and conclusion, for the reasons presently set forth.

It is our opinion that the facts and circumstances disclosed in the record force the conclusion that the articles of personal property mentioned in "Exhibit B," with the exceptions hereafter noted, were given by Item 12 of the Will to Norma Jean, and, conversely that said personal property was not a part of or connected with the Shaw Gas & Plumbing Company, and consequently the Will must be so construed.

A great deal of light is available in the interpretation of the Will in question when we get an over-all picture of the factual situation in this case. Percy A. Shaw many years ago engaged in business under the firm name of Shaw Gas & Plumbing Company and during years of operation he was successful and accumulated considerable profits. He had an established place of business under the name mentioned, conducting an active business and had an employee to keep not only strictly business records but individual records for himself. The two sets of records should not be confused. He had no partner and he was the sole owner of the business. We gather from the record that when any considerable amount of money was accumulated by the business over and above that necessary for operating expenses he would naturally invest in certain securities and would place some of the money in different banks in his own name—some in checking accounts and some in savings

accounts. Although the record does not affirmatively show it, we might assume that the money with which the testator bought the real estate heretofore mentioned was earned by the Company. It would be unreasonable to even suggest that the real estate was a part of or connected with the Company business. It would appear little less unreasonable to say that the money withdrawn from the Company business by Mr. Shaw and placed in the bank in his own name should be considered as a part of or connected with the Company business. There are several things which confirm our conviction that Mr. Shaw did not consider money placed in the bank or in securities in his own name to be a part of his business operations. First, he at all times kept an account in the Commercial National Bank in the name of the Shaw Gas & Plumbing Company, and he kept a savings account in the same bank and in the same name. It is obvious, we think, that these two accounts were and are connected with the Company business. Second, it is conceivable of course that an occasion would arise when Mr. Shaw would need more money in the Company checking account than he had at the time in order to handle some particular job. On such occasions he would not write checks on his personal accounts but would transfer the money from his own account to the Company account. To our mind this conclusively shows that Mr. Shaw considered the bank accounts and securities which he held in his own name to be separate and distinct from the Company's checking account. It is axiomatic that a business ordinarily is not conducted for the sole purpose of keeping the business in existence but is conducted in order to make a profit which can be used for personal enjoyment and security, so when money is withdrawn from the business and set aside for the purposes just mentioned it can no longer be said to be connected with the business.

Introduced in the record are several ledger sheets showing in detail the money taken from the testator's business and placed in savings accounts and securities. There is nothing on these sheets to indicate that the se-

curities or bank accounts were to be the property of or connected with the business of the Company. It appears to us only to be the natural and normal way for Mr. Shaw to keep a record of his financial investments — all of which it must be remembered were in his own personal name and not in the name of the Company. It is hard to imagine a more effective or natural way for Mr. Shaw to separate accumulated profits from the "Company" business. It is not significant that all property was assessed in the name of the Company. Mr. Shaw was the sole owner not only of his personal investments but also of the Company business and it made no difference, at least from a financial standpoint, under what name his properties were assessed. It was Mr. Shaw who paid the taxes in any event.

Appellant points out that in the interpretation of wills we should attempt to determine the intention of the testator citing *Cross* v. *Manning,* 211 Ark. 803, 202 S. W. 2d 584, and *Graves* v. *Bean,* 200 Ark. 863, 141 S. W. 2d 50; that in determining the intention we must look at the will as a whole, citing *Thompson* v. *Arkansas National Bank, Trustee,* 220 Ark. 802, 249 S. W. 2d 958 (and other cases); and that we should consider the language used by the testator and the surrounding facts and circumstances, citing *Rufty* v. *Brantly,* 204 Ark. 32, 161 S. W. 2d 11. In general we are in thorough agreement with these announced rules and in considering this case we have had them constantly in mind, but we cannot make a will for Mr. Shaw.

We are not informed that the exact question presented in this case has heretofore been before this court. However in the case of *In Re Fricke's Will,* 202 N. Y. S. 906, 122 Misc. 427, a similar factual situation was presented. One Adolph Fricke owned and operated a Linen business under the name of "Adolph Fricke," and kept a checking account in the firm name. He bought $7,-000.00 worth of bonds and placed in his private box which was conceded not to be connected with the business. Fricke visited Germany, and during his absence his employee, Ritzenthaler, took $5,000.00 "Company"

funds and bought bonds in Fricke's name and took $5,-000.00 "Company" funds and placed on time deposit in Fricke's name. Fricke died before returning. The court held the last two items belonged to the business, but the reason given is highly significant and controlling in the case under consideration. The Court first said:

"The profits of the business was his property, and he had a right to direct whether it should go elsewhere, or remain in the business."
Following this the Court said:

"The court finds no direction from the testator to the manager authorizing him to segregate from the avails of the business the investment made by the manager. He never chose to disassociate it from his business.

"None of these had been segregated to the private funds of the testator by the direction of the testator. The testator had no partners, and the business and all its assets were entirely his. He had the right to withdraw what and when he pleased from the business. That both testator and petitioner recognized a sharp distinction between the testator's assets as long as they were kept in the business and their status after they were separated and segregated from the business, . . ."

On the whole it is hard to imagine how Percy A. Shaw could have done anything more than he did do to show his intention to draw off the profits from the Shaw Gas & Plumbing Company and segregate and designate them as his own personal assets, disconnected entirely from the Company. The fact that he kept a ledger sheet on which he listed his different investments is no indication whatever that the property was considered a part of the Company. This is definitely shown by the fact that the Oldsmobile used by Mr. and Mrs. Shaw and concededly not connected in any way with the Company, was listed on a ledger sheet and on his inventory kept at the place of business.

It is crystal clear from the record that Percy A. Shaw made a definite distinction between money to be used in the business and money withdrawn from the business. The books and the oral testimony both show conclusively that when Shaw considered he had more money than was needed in the business he withdrew it from the business and from the Company account and with the money withdrawn he (a) deposited it in different banks in his own checking account and in his own name; (b) He deposited it in different banks in savings accounts in his own name; (c) He invested it in the Investors Diversified Services in his own name, and; (d) He bought shares of stock in seven different companies in his own name. The logical conclusion must follow that as long as he left the aforementioned deposits and stock certificates in his own name that he meant them to be separate and apart from the Company business.

Before the introduction of testimony it was stipulated that "Exhibit B" [copied above] should be amended to include the $118.00 deposited in a savings account in the Commercial National Bank under the name of Percy A. Shaw. We assume this refers to the item of $118.15 in said bank in the name of Shaw Gas & Plumbing Company as it is included in the Inventory heretofore copied. On this assumption, the $118.15 should be considered as connected with the business of the Company. This money was deposited in the name of the Company and the executrix must have considered it to be an asset of the Company since it was so listed in the Inventory. As we interpret the trial court's decree this money was classified as personal property of Percy A. Shaw and as such was disposed of in Item 12 of the Will, but it is our conclusion that it should be listed with the assets of the Company and consequently disposed of under Item 6 of the Will.

The majority of the court has concluded that two other items mentioned in "Exhibit B" are "connected with the business" of the Company, viz; (a) the sum of $1,279.88 on deposit in savings account with Twin City

Bank, North Little Rock, under the name of Percy A. Shaw, and (b) the Willys Jeep. The evidence shows that the testator withdrew money from the above mentioned savings account and placed it in the Company checking account, and it also shows that the Jeep was purchased with Company funds, that the license [in the name of Percy A. Shaw] was paid for out of Company funds and that it was used to some extent in Company business.

The decree of the trial court is affirmed in all respects except as to the items mentioned above and, as to said items, the decree is reversed, with directions that the trial court enter a decree consistent with this opinion.

The Chief Justice thinks the item of $1,278.88 (Twin City Bank savings account) had been segregated from the business and should therefore be treated as personal property disposed of under Item 12.

Justices HOLT, MILLWEE, and GEORGE ROSE SMITH dissent as to the affirmance.