PILES *v.* CLINE.

4-5384                                   125 S. W. 2d 129

Opinion delivered February 20, 1939.

858

*J. N. Fortner, W. A. Bates* and *Donald Poe,* for appellant.

*Hardin & Barton,* for appellee.

SMITH, J. This appeal involves the construction of the seventh paragraph of the last will and testament of T. J. Olive. This paragraph reads as follows: "Seventh: I give to my wife, Maggie E. Olive, (four certain lots, which are described by metes and bounds). I also give my wife, Maggie E. Olive, all the notes, moneys, bonds or any other property that I may have at the time of my death. She to have all to do with as she sees fit and upon the death of my wife it is my desire that whatever property that she may have that came to her through me shall be given to my children above, for them to have it in equal parts. And I hereby appoint my wife, Maggie Olive,

to be the sole executrix of my last will, and direct that she shall serve without bond.''

In the first paragraph of the will the testator directed that ''. . . all my just debts shall be paid, and that the legacies hereinafter given shall, after the payment of my debts, be paid out of my estate.''

By paragraph two of the will the testator gave and bequeathed a certain tract of land to his son, W. A. Olive. By paragraph three a tract of land is given to his daughter, Belle Black. Paragraph four gives a tract of land to Maxie William, a daughter. Paragraph five gives a tract of land to R. H. Olive, a son, who is also forgiven the payment of a note for $221 due the testator. Paragraph six gives a tract of land to J. R. Olive, a son, who is also forgiven the payment of a note due his father.

It is, after making these specific bequests, contained in paragraphs 2, 3, 4, 5, and 6, to his children, that the remainder of the testator's property is devised to his wife.

The testimony shows that the testator had accumulated a considerable estate, the accumulation of himself and his family. He had not inherited any property, nor had his wife, and she owned no property when she married the testator. The value of the personal property of the testator, as shown by the appraisement thereof, was $8,798.65, which was all included in paragraph seven, copied above. This paragraph gave the widow four pieces of residential property, including the testator's home, and the value thereof was greater than the value of the personal property.

The widow qualified as executrix of the estate, and the value of the personal property increased, under her administration, to $9,775.30, including $5,311.85 cash on hand. The property devised in paragraph seven was of much greater value than all the property devised to all the children.

The testimony shows that the testator had been married prior to his marriage to Maggie. He had married young, and five children had been born to that marriage. When his first wife died the oldest child was eleven years of age and the youngest was less than one year old.

Shortly after the death of his first wife the testator married Maggie, who was then only seventeen years old, and who survived him. He and Maggie had been married fifty years at the time of his death, and no children had been born to them. The family life was extremely pleasant. The stepchildren loved their stepmother the same as if she had been their own mother, and she loved and cared for them as if they were her own children. The relationship between the stepchildren and stepmother was such that acquaintances in later life did not know Maggie was not the mother of the children. The confidence of the testator in his wife was unlimited. Mrs. Olive's next of kin were two half-brothers and a half-sister, but her relationship with them was not cordial or intimate, and long periods of time would elapse without their seeing each other.

The attorney who drew the will testified that Mrs. Olive understood that she had been given only a life estate, and that she never claimed any other interest, and that she expressed the purpose of saving as much of the estate as possible for the children of the testator. Evidently she regarded these children as her own.

The will was executed March 5, 1935, at which time both the testator and his wife had reached an advanced age. The testator died June 14, 1936, and his widow died September 7, 1937. Upon the death of the widow her half brothers and half sister claimed as heirs at law of the widow all the testator's estate undisposed of by the widow at the time of her death.

The chancellor construed the will as a devise to the widow in fee, and from that decree is this appeal.

If we were permitted to consider the testimony above recited in the construction of the will, there could be no possibility of a doubt as to the conclusion to be reached. But, as was said in the case of *Ellsworth* v. *Arkansas National Bank, Trustee,* 194 Ark. 1032, 109 S. W. 2d 1258, extrinsic evidence may be admitted to interpret a will, but it will not be admitted to show what the testator meant, as distinguished from what the words of the will express, but only for the purpose of showing the meaning of the words employed in the will. In that opinion we quoted

from the case of *Eagle* v. *Oldham,* 116 Ark. 565, 174 S. W. 1176, 1199, as follows: " 'We must look to the will to determine the testator's intention, but in getting this view we should place ourselves where he stood, and should consider the facts which were before him in deciding what he intended by the language which he employed. If the rule were otherwise, the making of wills would be so difficult that the very purpose of permitting this method of disposition of property would frequently be defeated.' "

Opposing counsel have cited many cases from this and other courts to aid us in construing this will. But the legal principles involved are not difficult, and have been frequently announced by this court. The difficulty in distinguishing these cases is in the application of these principles to the facts of each case, no two of which are alike.

The duty of the court is to ascertain the intention of the testator, and to give that intention effect. We must do this by a consideration of the language employed in the will. The imperfection of our language is such that it is difficult to write a sentence which can be given only one interpretation. One may write a sentence which expresses the thought he intended to convey, and it may express that thought, but, if this thought or purpose is involved, it is very difficult to so express it that no construction can be given except that intended.

Wills cannot ordinarily be written in a single sentence, and we must, therefore, read a will in its entirety and give effect, if we may, to all the language which the testator has employed. When we have done so, if the intention of the testator is clear, we have only to declare the intention thus expressed. If, however, the language of the will is ambiguous and the intention of the testator is not clear, we must invoke the aid of settled rules of construction with reference to which the will is said to have been written, although, in fact, the testator may have been wholly ignorant of these rules of construction. The application of these rules of construction may, in some instances, operate to defeat the actual intention of the testator, but, if so, the fault lies with him in failing to clearly express his intention.

It was the opinion of the court below that the language in paragraph seven, "it is my desire that whatever property that she may have that came to her through me shall be given to my children above, for them to have it in equal parts," was precatory only, as is evidenced by the following quotation from the chancellor's opinion: "The will conveys to Maggie E. Olive by clear terms the land and personal property, and this clear gift should not be modified or qualified by a later obscure and ambiguous statement nor should the gift be qualified by mere precatory language." Appellee seeks to support this finding by citation of numerous authorities to the effect that a clear gift by an earlier provision of a will will not be modified or qualified by mere precatory language.

We are cited also to cases like that of *Bernstein* v. *Bramble*, 81 Ark. 480, 99 S. W. 682, 8 L. R. A., N. S., 1028, 11 Ann. Cas. 343, where it was held, to quote a headnote in that case, that "Where property is devised to the first taker in fee simple, with limitation over to another at the former's death, the limitation over is void for repugnancy."

These, and other cases of similar effect, would be decisive of this appeal, if it were assumed, or found, that the testator had used only precatory words relating to the disposition of the estate conveyed to his wife upon her death, or that he had devised to her in fee simple, with a limitation over to another. But these are the very questions we are considering and are called upon to decide.

The seventh paragraph is in the nature of a residuary clause. There is no partial intestacy in this case. By this paragraph the aged testator devised to his aged wife all of his property not devised to his children in preceding paragraphs. It does not express a mere hope, or preference, or advice, to the wife as to what she shall do with this property devised to her which she had not used or disposed of at the time of her death. The testator himself made that disposition by giving that property—whatever it may have been—upon the death of his wife to his children in equal parts.

The same sentence which. defines the interest given the wife and gives the right to do with "as she sees fit" also disposes of any part of the estate which the widow owned at her death, that disposition being that it shall then be taken by the testator's children in equal parts. The testator was not asking his wife to make that disposition upon her death; he made that disposition himself when he executed the will.

Now, the testator did give to his wife the property described in the seventh paragraph, "to do with as she sees fit," and this language was, no doubt, sufficient to convey the right to sell and convey the fee, had the widow elected to sell. But she did not sell or dispose of anything. She accumulated more.

It was held in the case of *Little Rock* v. *Lenon,* 186 Ark. 460, 54 S. W. 2d 287, to which case further reference will be made, that "The great weight of authority, however, including this court, supports the rule that a life estate may be. created, coupled with power of disposition, and that such power does not change the life estate into a fee for the reason that the power of disposition is not in itself an estate, but is an authority so to do derived from the will."

In the case of *Little Rock* v. *Lenon, supra,* the testator first devised his property to his wife in fee, but a codicil subsequently added provided "that all property left by me to my wife which has not been used or expended by her during her lifetime be donated and turned over to the City Hospital of Little Rock."

It was there contended, and the judge who wrote the opinion of the court had the. view, that the codicil constituted "a mere wish or will, precatory words, that she (the wife) donate or give such of his (the testator's) property as remained, by will, to the City Hospital." But the majority of the court held otherwise, being of the opinion that the testator had not merely advised what he would like for his wife to do, but had himself made that disposition of his estate.

So, here, we conclude that the testator devised the bulk of his estate, including all his personal property, to his wife, to use it "as she sees fit," and to sell it, if she

saw proper to do so, and he did not merely indicate the disposition he wished his wife would make of any property she had not used, consumed or sold, but he made that disposition himself. The will itself disposed of the property which the wife had not used, consumed or sold, and it was unnecessary for the wife to do anything or to take any action to effectuate the testator's wishes.

The opinion in the recent case of *Jackson* v. *Robinson,* 195 Ark. 431, 112 S. W. 2d 417, confirms this view. The second paragraph of the will in that case reads as follows: ''I give, devise and bequeath to my wife, Jennie Jackson, all and entire my real and personal property of every nature and kind and wheresoever situated, with full power in her as executrix, jointly with my executor, A. W. Jackson, to sell and convey any and all real estate of which I may die seized and possessed and wheresoever situated and to pass an absolute title in fee to the purchaser or purchasers thereof.''

The fourth paragraph of the will reads as follows: ''Fourth: Having confidence in my wife, I have made no provision for my children, Clara Jackson Robinson, Tennie Jackson Donaldson, A. W. Jackson, Emma Jackson and Mabel Jackson Herget, but it is my desire that after the death of my wife that all of the property which may not have been sold, conveyed or otherwise disposed of by her during her life shall then go to my children in equal parts, the children of any child that may be dead taking the deceased parent's part.''

The widow, after the death of her husband, the testator, made a will conveying a portion of her husband's real estate. It was there held, to quote a headnote: ''Wills—Construction of—Under a will giving all property of the testator to his wife with full power to sell and pass the title in fee to the purchaser and providing that 'all property not sold by her during her life shall go to my children in equal parts, etc.,' the wife could not pass title by will to property not disposed of by her in her lifetime, since, at her death, it passed to the children.''

Here, Mrs. Olive, the testator's widow, could not have devised this property to her brothers and sister, or

to anyone else, since, at her death, the title passed to the testator's children, and if she was without power to devise the property by her will, they could not inherit the property from her, as her interest in her husband's estate terminated with her death.

We conclude, therefore, that the chancellor was in error in holding that the widow took title in fee. That decree will be reversed, and the cause will be remanded, with directions to enter a decree conforming to this opinion.