Lenora Anna BONE, Executrix of the Estate of Clarence W. Bone, Deceased, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 521.

United States District Court
W. D. Arkansas,
Fayetteville Division.

Feb. 16, 1965.

Greenhaw & Greenhaw, Fayetteville, Ark., Smith, Williams, Friday & Bowen, Little Rock, Ark., for plaintiff.

Stanley F. Krysa, Tax Division, Dept. of Justice, Robert L. Waters, Atty., Dept. of Justice, Washington, D. C., Charles M. Conway, U. S. Atty., Fort Smith, Ark., for defendant.

JOHN E. MILLER, Chief Judge.

### Statement

On March 27, 1964, plaintiff commenced this action seeking to recover $15,587.42, together with interest and costs, because of an alleged erroneous disallowance of marital deduction in the estate tax return of Clarence W. Bone, deceased. The defendant filed its answer May 28, 1964, in which it admitted the filing of the estate tax return and the disallowance of the marital deduction claimed for the residue of the deceased's estate devised to Lenora Anna Bone and alleged that the determination of the Commissioner of Internal Revenue was correct. On December 5, 1964, the defendant and plaintiff, through their respective attorneys, filed a stipulation containing facts and procedures to be followed in the event the court reached certain conclusions.

In clarification of the facts set forth in the stipulation, the court makes the following findings of fact:

## No. 1

The deceased, Clarence W. Bone, died testate May 4, 1961. His will was duly admitted to probate by the Probate Court of Washington County, Arkansas. The plaintiff, Lenora Anna Bone, surviving wife, qualified as Executrix and was granted letters testamentary May 22, 1961.

## No. 2

An estate tax return for the estate of Clarence W. Bone was filed July 30, 1962, reflecting an adjusted gross estate of $187,142.94. The estate tax return claimed deduction for bequests to the surviving spouse in the amount of $93,-571.47, and the estate tax as reflected by that return was paid at that time.

## No. 3

The Internal Revenue Service readjusted the gross estate and determined it to be $192,893.80. The deduction for bequests to the surviving spouse was decreased from $93,571.47 to $34,379.19. The reduction was based upon a disallowance of the value of the property passing to the surviving spouse under the residuary clause of Clarence W. Bone's will in the amount of $96,446.90. The tax as computed after adjustment has been paid, and a timely request for refund was made but denied by the Internal Revenue Service.

## No. 4

The will of Clarence W. Bone in the third clause provided:

"Third. All of the rest and residue of my estate, real, personal and mixed, of every nature and kind and wheresoever located, I hereby give, devise and bequeath the same to my wife, Lenora Anna Bone, for and during her natural life, with the right to my said wife to use the same as she deems best and proper without limitation, giving unto my said wife the right and power of selling conveying and converting any of my property. Upon the death of my said wife, the balance and residue of my estate which has not been consumed, I give, devise and bequeath to and the same shall vest absolutely in, my five children in fee simple, in the proportions hereinafter set forth * * *."

## DISCUSSION

As the court views the pleadings, the stipulation, the facts and contentions of the parties as set forth in their briefs, the issue presented is: Whether the estate of Clarence W. Bone is entitled to a marital deduction for the value of the property devised to Lenora Anna Bone in the residuary clause of Clarence W. Bone's will as provided in Sec. 2056 (b) (5) of the Internal Revenue Code, 26 U.S.C. § 2056(b) (5). In determining this question, the court must examine the extent and nature of the spouse's interest as devised in the residuary clause of the decedent's will.

Section 2056(b) (5) and the regulations promulgated by the Internal Revenue Service grant a marital deduction to the estate for a devise to a surviving spouse of a life estate with a power of appointment if it meets certain criteria. The regulations provide that five conditions have to be satisfied to entitle the estate to a marital deduction under this section:

"(1) The surviving spouse must be entitled for life to all of the income from the entire interest or a specific portion of the entire interest, or to a specific portion of all the income from the entire interest.

"(2) The income payable to the surviving spouse must be payable annually or at more frequent intervals.

"(3) The surviving spouse must have the power to appoint the entire interest or the specific portion to either herself or her estate.

"(4) The power in the surviving spouse must be exercisable by her alone and (whether exercisable by will or during life) must be exercisable in all events.

"(5) The entire interest or the specific portion must not be sub-

ject to a power in any other person to appoint any part to any person other than the surviving spouse." Regs. Sec. 20.2056(b)-5(a).

An examination of these regulations disclose that conditions (1) and (2) are satisfied because the devisee spouse is given the entire interest, and there is no division of principal and income. Condition (5) is also met upon an examination of the applicable provision of the testator's will quoted above as no power of appointment was given by the testator to any person other than the devisee spouse.

██ Whether or not the estate is entitled to the marital deduction thus resolves itself to a determination of whether or not conditions (3) and (4) quoted above have been satisfied.[1] Although the deduction and the conditions under which it may be taken are determined by the Internal Revenue Code, the nature and extent of the devisee spouse's interest is a matter of state law. In other words, whether or not (a) the surviving spouse has the power to appoint the entire interest, and (b) whether or not the power to appoint the entire interest is exercisable by the surviving devisee spouse alone, and (c) whether or not the power to appoint the entire interest by the surviving spouse alone is exercisable in all events, are all questions of state law as the nature and extent of these interests are determined by state law. See: Bookwalter v. Phelps, (8 Cir.1963) 325 F.2d 186; Hoffman v. McGinnes, (3 Cir.1960) 277 F.2d 598, 90 A.L.R.2d 405; Darby's Estate v. Wiseman, (10 Cir.1963) 323 F.2d 792; Estate of Edward A. Cunha v. Comm., (9 Cir.1960), 279 F.2d 292; Jackson v. United States, 376 U.S. 503, 84 S.Ct. 869, 11 L.Ed.2d 871 (1963).

The plaintiff in her brief in support of her contention that as the devisee spouse under the residuary clause of the decedent's will, she has a life estate with an absolute power of appointment which entitles the estate to a marital deduction, cites Archer v. Palmer, 112 Ark. 527, 167 S.W. 99 (1914); Johnson v. Lehr, 192 Ark. 1004, 96 S.W.2d 20 (1936); Thurman v. Symonds, 126 Ark. 216, 190 S.W. 106 (1916); Union & Mercantile Trust Co. v. Hudson, 143 Ark. 519, 220 S.W. 820 (1920); Reddin v. Cottrell, 178 Ark. 1178, 13 S.W.2d 813 (1929); Little Rock v. Lenon, 186 Ark. 460, 54 S.W.2d 287 (1932); and Piles v. Cline, 197 Ark. 857, 125 S.W.2d 129 (1939).

In Archer v. Palmer, supra, the testator in his will granted his spouse a life estate with remainder over, and in a subsequent clause granted the spouse absolute power to dispose of the property. The Supreme Court held that a deed executed by the devisee spouse conveyed the fee title to property devised to her as she had the absolute power of appointment. The will, in granting this power, stated as follows at page 529 of 112 Ark., page 99 of 167 S.W.:

"Fourth. I hereby direct, that my beloved wife, Laura O. L. Archer, shall have full power and authority to sell and dispose of any and all property, both real, personal and mixed in such manner as she may desire of which I may die seized."

In Thurman v. Symonds, supra, the testator devised all his property to his spouse, and the will recites as follows at page 217 of 126 Ark., page 107 of 190 S.W.:

"III. I also bequeath to my beloved wife the right and power to

1. Sec. 20.2056(b)-5(g) (1) of 20 C.F.R. provides:

"(g) Power of appointment in surviving spouse. (1) The conditions set forth in paragraph (a) (3) and (4) of this section, that is, that the surviving spouse must have a power of appointment exercisable in favor of herself or her estate and exercisable alone and in all events, are not met unless the power of the surviving spouse to appoint the entire interest or a specific portion of it falls within one of the following categories:

"(i) A power so to appoint fully exercisable in her own favor at any time following the decedent's death (as, for example, an unlimited power to invade)."

sell and make warranty deed to any real estate that I may be possessed of at the time of my death and to use the proceeds for her own personal use and benefit without bond or process of court or accountability to any person or persons. Now in the event that I survive my said beloved wife then in that event this will and testament shall be null, void and remain my property as heretofore."

The Supreme Court, in construing the decedent's will, referred to the Archer case, supra, and at page 218 of 126 Ark., page 107 of 190 S.W. stated:

"What was said there is applicable to the construction of this will, and in so far as this case differs from the instant case this is a stronger one for the application of this principle; for in the Archer v. Palmer Case the power was granted to one who had only a life estate, whereas here the will vests the fee in the widow and her heirs by the testator begotten.

"Nor do we think the conveyances executed by Mrs. Meadors are void because they were executed by her in her individual capacity, rather than as executrix of the estate of her husband. Under the second clause of the will she might have conveyed as executrix for purposes of administration upon this estate, but, however that may be, the grant of the power to convey contained in the third clause of the will was to her as wife, and not as executrix, and the conveyances in question were made pursuant to this power, and for the reasons stated will be upheld."

In Union & Mercantile Trust Co. v. Hudson, 143 Ark. 519, 220 S.W. 820 (1920), the testator by will devised the residue of his property to his mother by the following language: " * * * to have, hold, use and enjoy during her natural life, it being my desire that she shall have the absolute right to sell or incumber it without any restrictions whatever." The Supreme Court, again referring to Archer v. Palmer, stated that a reading of the will as a whole reflects a "manifest intention of the testator to give a life estate with the added power in the life tenant of disposing of the whole estate."

In Reddin v. Cottrell, 178 Ark. 1178, 13 S.W.2d 813 (1929), the testator devised to his spouse certain real property by the following provision in his will:

"I give and bequeath to my executrix, Eliza F. Hall, all my property, situated, wherever it may be, either real or personal, after the legacies herein provided have been executed, to have and to hold the same as her own with right to sell and convey same during her natural life to make title deed thereto, without restriction or limitation, provided, however, if she dies seized and possessed of any part of my estate that I may own at my death, then that same shall go to and vest in our foster daughter, Mrs. Ira V. Reddin, and to her heirs in their own right to have and own and control the same."

The Supreme Court again referring to Archer v. Palmer, supra; Thurman v. Symonds, supra; and Union & Mercantile Trust v. Hudson, supra, stated that under the settled rules of construction of wills that the manifest intent of the testator was that the devisee had the absolute right to convey the real property which she held as a life tenant.

In Little Rock v. Lenon, supra, the Supreme Court in construing the will of the testator, which, by its primary provisions and a codicil, granted the devisee spouse a life estate with power of disposition, found no limitation on the devisee's power to dispose of the property. It did, however, state that the unconsumed surplus remaining at the life tenant's death vested in the remaindermen. To the same effect see Johnson v. Lehr, 192 Ark. 1004, 96 S.W. 2d 20 (1936); Piles v. Cline, 197 Ark. 857, 125 S.W.2d 129 (1939), in which both cases the Supreme Court held that

under the provisions of the testator's will granting the devisee a life estate with absolute power of appointment, that the surplus remaining at the life tenant's death vested in the remaindermen named in the testator's will.

The defendant in its brief asserts that the life estate and the power of disposition granted by the deceased's will does not meet the requirements of 2056 (b) (5) for the reason that "the surviving spouse could not make a gift of the residue of the decedent's estate in pursuance of her rights to that property, and her power of appointment therein is thus not exercisable in all events." In support of this contention the defendant cites Piatt v. Gray, (6 Cir.1963) 321 F.2d 79; United States v. Lincoln Rochester Trust Co., (2 Cir.1962) 297 F.2d 891; May's Estate v. Commissioner, (2 Cir.1960) 283 F.2d 853; Collings v. United States, (W.D.Ky. 1961) 201 F.Supp. 226; Peyton's Estate v. Commissioner, (8 Cir.1963) 323 F.2d 438; 20 C.F.R. 20.2056(b)-5(g) (3).[2] (In addition to the Arkansas cases cited in the plaintiff's brief, the defendant cites United States v. Moore, 197 Ark. 664, 124 S.W.2d 807 (1939).)

These various federal citations which the court has examined hold that under the substantive law of New York, Minnesota and Kentucky, a life tenant with the power of invading the corpus when necessary for her maintenance, comfort and support does not, under the substantive law of those states, have the power to use and dispose of the estate in her discretion. In those states this limitation upon the life estate is construed as a limitation on her exercise of the power to invade the corpus.

However, in the following cases upon similar facts, the applicable state substantive law was held to grant the requisite discretion of the life tenant to use and dispose of the corpus of the estate to qualify for a marital deduction: Stallworth's Estate v. Commissioner, (5 Cir. 1958) 260 F.2d 760; McGehee v. Commissioner, (5 Cir.1958) 260 F.2d 818; Hoffman v. McGinnes, (3 Cir.1960) 277 F.2d 598, 90 A.L.R.2d 405. The most that can be gleaned from the above cited federal cases is that various Courts of Appeal have held that whether a decedent's estate was entitled to a marital deduction or was not entitled to it under Sec. 2056(b) (5) is dependent upon the substantive law of the state of the decedent.

In support of its contention that the instant will, under the substantive law of Arkansas, does not grant a life estate with a power exercisable in all events, the defendant cites and relies upon United States v. Moore, 197 Ark. 664, 124 S.W.2d 807 (1939). Annie Moore, the appellee, commenced the action

2. Sec. 20.2056(b)-5(g) (3) provides:

"(3) A power is not considered to be a power exercisable by a surviving spouse alone and in all events as required by paragraph (a) (4) of this section if the exercise of the power in the surviving spouse to appoint the entire interest or a specific portion of it to herself or to her estate requires the joinder or consent of any other person. The power is not 'exercisable in all events', if it can be terminated during the life of the surviving spouse by any event other than her complete exercise or release of it. Further, a power is not 'exercisable in all events' if it may be exercised for a limited purpose only. For example, a power which is not exercisable in the event of the spouse's remarriage is not exercisable in all events. Likewise, if there are any restrictions, either by the terms of the instrument or under applicable local law, on the exercise of a power to consume property (whether or not held in trust) for the benefit of the spouse, the power is not exercisable in all events. Thus, if a power of invasion is exercisable only for the spouse's support, or only for her limited use, the power is not exercisable in all events. In order for a power of invasion to be exercisable in all events, the surviving spouse must have the unrestricted power exercisable at any time during her life to use all or any part of the property subject to the power, and to dispose of it in any manner, including the power to dispose of it by gift (whether or not she has power to dispose of it by will)."

against the administrator of the estate of T. A. Beck, deceased, for the recovery of certain property in the hands of the administrator of T. A. Beck's estate. Appellee's claim to the property was based upon an alleged oral gift to her of property by the said T. A. Beck shortly before his death and which he held as legatee or devisee under the will of his wife, Lizzie Beck, who predeceased him by five days. The United States intervened in the suit, claiming the property on the ground that it was designated as the sole beneficiary as to the remainder under the last will and testament of Lizzie Beck, deceased, and under its terms the intervenor claimed to be the equitable owner of the property claimed by appellee and of which the said T. A. Beck died seized and possessed subject only to his debts.

The particular provision of the will of Lizzie Beck was as follows:

"I do give, devise and bequeath to my husband, T. A. Beck, all the rest and residue of my estate, both real and personal, of whatsoever kind wheresoever located of which I may die seized and possessed for his own proper use and benefit and to be owned, controled and disposed of by him as he may desire to do."

A short time before the death of the testatrix, she executed a codicil reading as follows:

"I further will and direct that at the death of my said husband, T. A. Beck, that whatever of my estate of every kind and nature which shall remain unused or unexpended by him, shall be paid over and delivered to the Government of the United States to be expended by the United States in any way or manner authorized by the laws of the United States."

It will be noted that in the original will the testatrix devised all of her property to her husband "for his own proper use and benefit and to be owned, controled and disposed of by him as he may desire to do." In the codicil she limited the estate devised in the body of the will by providing "that whatever of my estate of every kind and nature which shall remain unused *or unexpended by him*" shall vest in the contingent beneficiary, the Government of the United States. (Emphasis added.)

On page 668 of 197 Ark., page 809 of 124 S.W.2d the court said:

" 'The construction of the provisions contained in a will and codicil may be different from that which would be given to the same provisions all embodied in a will. This is due to the fact that the mere taking of a codicil gives rise to the inference of a change in intention, and such an inference does not arise in the case of a will standing by itself. When a will and codicil are inconsistent in their provisions the codicil, being the latest expression of the testator's desires, is to be given precedence.' "

The court then on page 669 of 197 Ark., page 809 of 124 S.W.2d said:

"We hold, therefore, that the effect of the will and codicil is to limit in T. A. Beck a life estate, and not an estate in fee, and that all of said property remaining unused and unexpended at his death reverted to appellant." (United States.)

The Moore case was decided February 6, 1939. On February 20, 1939, the same court decided Piles v. Cline, 197 Ark. 857, 125 S.W.2d 129. Cline involved the construction of a paragraph of the last will and testament of T. J. Olive, reading as follows:

"I give to my wife, Maggie E. Olive, (four certain lots, which are described by metes and bounds). I also give my wife, Maggie E. Olive, all the notes, moneys, bonds or any other property that I may have at the time of my death. She to have all to do with as she sees fit and upon the death of my wife it is my desire that whatever property that she may have that came to her through me shall be given to my children * *."

The testator predeceased the devisee. Upon the death of the devisee, her half brothers and half sister claimed as her heirs at law all of the testator's estate undisposed of by the devisee at the time of her death. The Chancellor construed the will as a devise to the widow, Maggie E. Olive, in fee and from that decree an appeal was prosecuted. At page 861 of 197 Ark., page 130 of 125 S.W.2d, the court said:

> " ' "We must look to the will to determine the testator's intention, but in getting this view we should place ourselves where he stood and should consider the facts which were before him in deciding what he intended by the language which he employed." ' "

The court then called attention to the fact that opposing counsel had cited many cases decided by the Supreme Court of Arkansas and other courts to aid the court in construing the will then before it. However, the court said:

> "But the legal principles involved are not difficult, and have been frequently announced by this court. The difficulty in distinguishing these cases is in the application of these principles to the facts of each case, no two of which are alike."

The Court considered several other cases that had been decided by it but did not mention the Moore case. It will be borne in mind that the will gave the property to Maggie E. Olive "to do with as she sees fit" and upon her death whatever property that she may have at that time which came to her through the testator was to be given to the testator's children. In other words, as the court held, the will did not express a mere hope or preference or advice to his then wife as to what she should do with the property devised to her which she "had not used or disposed of at the time of her death." The testator himself made that disposition by giving the remaining property to his children. Further the court said at page 863, 125 S.W.2d at page 131:

> "Now, the testator did give to his wife the property described in the seventh paragraph, 'to do with as she sees fit,' and this language was, no doubt, sufficient to convey the right to sell and convey the fee, had the widow elected to sell. But she did not sell or dispose of anything. She accumulated more."

The Moore case does not sustain the contention of defendant because of the limitation placed by the testatrix in the codicil. In the original will, the devisee, T. A. Beck, was given all of the property owned by his wife "for his own proper use and benefit and to be owned, controled and disposed of by him as he may desire to do." The codicil provided that upon the death of T. A. Beck, the devisee, that whatever part of the estate remained "unused or unexpended by him shall be paid over and delivered to the Government of the United States." Thus, by the execution of the codicil the testatrix limited the estate described in the original will.

In the instant case there is no limitation upon the right of the devisee to sell, convey, and convert any and all of the property. Under the provision of the will no one would argue that a deed executed by Lenora Anna Bone and delivered would not convey a fee simple title or at least all of the title that was possessed by the testator at his death.

It seems too well established in Arkansas to require elaborate discussion of the principle that the testator's intent with regard to the nature and limit of a devisee's interest is to be determined by the four corners of the instrument and not a technical interpretation of the granting or devising clause. The above cases cited are uniform in their reiteration of the principle that an intent manifested by the testator that the devisee have an unlimited use of the whole estate granted constitutes an absolute power to dispose of the property by use, sale or gift. In the instant action the testator's will quoted above stated: "giving unto my said wife the right and power of selling, conveying and converting any of my

property" and "to use the same as she deems best and proper without limitation." The Moore case does not establish that a donee of a life estate with the discretion to invade the corpus at will cannot give or dispose of it in any manner the donee deems proper. The law of Arkansas does not preclude a testator's granting a donee the power to absolutely invade the corpus at the donee's discretion, and such discretion is present in the instant case.

The devisee spouse has the same interest here as devised in Reddin v. Cottrell, supra, and Piles v. Cline, supra, in which the testator stated the devisee could sell, convey or use without restriction or limitation, although a remainder of any surplus was granted to testator's children. There is no limitation upon the devisee spouse in this case to use or consume or give or sell the entire estate in any manner she deems proper, although the balance or residue which has not been used or consumed upon the life tenant's death is granted to testator's five children in fee simple. The will expressly states that she is to have the property "without limitation." It should be noted that the above cited Arkansas cases uniformly state that a life tenant with such power to invade the corpus and consume or use it may defeat entirely the remaindermen's interest by the exercise of the life tenant's unlimited power over the property.

### CONCLUSIONS OF LAW

#### No. 1

The court has jurisdiction of the parties and the subject matter of this action. 28 U.S.C. § 1340.

#### No. 2

The devisee spouse was granted by the residuary clause of the will of Clarence W. Bone an absolute power of disposing or using the entire estate without limitation exercisable in all events.

#### No. 3

The estate of Clarence W. Bone, deceased, is entitled to a full marital de-

duction under Sec. 2056(b) (5) of the Internal Revenue Code, 26 U.S.C. 2056 (b) (5).

A judgment is being entered today with directions to the parties to compute a refund in accordance with the above.